Good morning, Your Honors. May it please the Court, my name is Shelley Hurwitz. I'm appearing today on behalf of the defendant and appellant in this case, Dr. Anthony Rothschild. There certainly are a lot of moving parts to this appeal. I'd like to reserve five minutes for rebuttal. Thank you, Your Honors. There certainly are a lot of moving parts to this appeal. There are a lot of issues in this case, but there are three that I think are very important that I'd like to highlight for the Court. The first is in connection with the public interest analysis under the anti-SLAPP statute and the plaintiff's position that this Court cannot consider what came after the last posting of October 28th of 2005. The second is the plaintiff's effort to distinguish the case of DuPont Murph, which we think is on all fours with this case. And finally, the standard of actual malice. As a preliminary matter, Your Honors, plaintiffs have presented arguments to this Court on whether or not anti-SLAPP motions are immediately appealable in Federal court and what the proper standard of review should be. Our position is those standards have been determined by the Ninth Circuit, and there is nothing at the Court that has been presented to the Court that would necessitate overruling those cases. On the issue as Dr. Rothschild, as one of the first speakers on the issue of the efficacy of Corlex and the related conduct of its insiders, our position, Your Honors, is that there is more than enough before the last posting to evidence a public interest in these issues. Nevertheless, we think it's important for the Court to be able to consider everything that happened afterwards as well. It undermines the legitimacy of this. Kennedy. May I understand? Are you conceding that the order is immediately appealable as a collateral order, or do you propose that our jurisdiction does not allow it? Oh, Your Honors, we believe that the order is immediately appealable. Okay. Fine. Thank you. Thank you. It undermines the legitimacy of the process if the plaintiffs are allowed to stand before the Court and say, nobody cared about Corlex, nobody cared what we were doing, when after the last posting there is a whole host of newspaper articles, Internet blogs, press releases, presentations, and especially, Your Honors, the United States Senate's investigation of Dr. Schatzberg and his related conflict of interest with regards to Corlex. The Court should not have to close its eyes to these issues. The plaintiffs would have the first person to speak on an issue to not have the protection of the law, and those who came afterwards to have the protection of the law. It's like saying that ---- Wait a minute. Just let me stop you for a minute. I thought that we're talking about California law, are we? Yes, Your Honors. Okay. I thought that the district court said that under California law, if it's a matter of public interest, then under California law, if there's malice, the anti-SLAPP statute doesn't apply. What the district court said was that it did not have enough information at the pleading stage to determine whether the SLAPP statute applied. Right. But as a matter of law, it wouldn't apply if there were malice. And it said, I don't know now. It looks like there may be sufficient indication that there is malice, and I'm not going to dismiss it at the pleading stage. Is that what happened? Well, it's a little bit hard to tell from the order, Your Honor. How do you read it? How I read it is the Court said, I cannot tell whether the SLAPP statute applies on the first instance based upon what I have before me. Right. And then there's a comment by the Court that says, Further from the four corners of the complaint, it appears that plaintiff causes of action refer to at least some unprotected activity. Right. And plaintiffs have demonstrated a probability of prevailing on those claims. Right. So we don't know if the Court found those statements to be actionable, if the Court found them to be actionable. No. Well, it said I don't have enough. As I read it, it said I don't have enough information here. Now, granted that we seem to have held that you could appeal at this point, but the question before us seems to be whether it was apparent from everything that the Court had before us that the case should not go forward. It should have been apparent. And we are checking that. We are doing that ruling. We are reviewing that ruling. Now, what was wrong with what the district court said there as to the question of malice? As to the question of malice, Your Honor, because the plaintiffs are limited-purpose public figures, they have to show they have to show a probability of showing malice, a clear and convincing evidence of malice. Well, no, no, no, no. The statute reads, Right. And in order to prevail on a defamation claim, a limited-purpose public figure like the plaintiffs must show clear and convincing evidence of malice. Clear and convincing or more probable than none? It's definitely clear and convincing. The standard is that the plaintiffs must show clear and convincing evidence of malice. What case is that? I know it's cited in our briefs, Your Honor. It is Annette F., California Appellate Court. It's one of the cases that says that. The Mason Court, MASSON, says that. Okay. What I am not understanding is at this stage, how can we possibly know? The California legislature has mandated that SLAC motions be determined at the pleading stage with only on the basis of pleadings and affidavits. This is a very unusual situation, in fact. Normally, you would file your SLAC motion within 60 days of the complaint being filed, and no discovery would have been conducted. Here, discovery, at least against Dr. Rothschild, was almost complete. They deposed him. They had forensic scientists analyze his computers. They subpoenaed documents from him. They subpoenaed documents from Internet providers, from the APA, and things of that sort. There certainly was enough of a record for the district court to, A, decide whether or not the SLAP statute applied, and, B, whether or not they had made a showing of a probability of success. And the district court said that it's sufficient here to show that there is some probability of success. Is that right? Well, the analysis, I think, stopped when the district court says, there's not enough here for me to determine whether or not there's a public interest, whether or not the SLAP statute would apply. And, you know, I think that there's some confusion because the district court because the three factors that were laid out by the district court overlap with the three factors for the actual malice standards. But the three factors that the court was actually setting forth here are situations in which courts have found that a public interest applies under the SLAP statute. And these are three categories of cases where courts normally say, yeah, okay, there's a public interest here. And it certainly does overlap with the actual malice standards. So, Your Honors, we think there was enough of a record before the last posting. But, again, we think that the Court should be able to look at what happened afterwards, look at the United States Senate investigation, everything that came afterwards. We think that saying that the first speaker gets punished and the last speaker is allowed to speak is not the law. It's like saying that Paul Revere can get punished for saying that the British are coming, but the guy down the street who told his neighbor to get his rifle would not get punished. And in 2007, the Gilbert v. Sykes Court looked at this very issue. And this Court said that it didn't make sense. The first person to speak and the first person to uncover controversial behavior would be punished, and those who came afterwards wouldn't. And the Court says, quote, unquote, that is not the law. The second issue I'd like to address, Your Honors, is the plaintiff's efforts to distinguish the DuPont-Merck case. In that case, the Court said, yes, the SLAP statute applies. We have a public interest here. The speech was about Coumadin, a blood thinner that was on the market. Plaintiffs say it's different because Coralux is not yet on the market like Coumadin was. Your Honor, we submit it is important in that situation. What they're saying is that there is a distinction without a difference. But if there is a difference there, the difference should be more speech. The SLAP statute has been enacted to protect speech, to further speech, to foster the marketplace of ideas. When a drug is not yet on the market, it means that we must have more speech about it. Finally, Your Honor, to briefly address the actual malice standard, the Court should have found the SLAP statute applied. After that analysis, the Court should have determined whether or not each of the statements were actionable. If they're opinion or substantially true, they are not actionable. The next Court should have done the third thing and looked to see if the actual malice standard applied and whether or not plaintiffs have met that standard. We cite many cases to the Court where SLAPs were granted on a lack of evidence of actual malice. The Rosenauer, Conroy, Vogel, Colt, and Sipple courts. And here, Your Honors, I see my yellow light is up. We submit that plaintiffs have not met that burden. Thank you. Thank you. May it please the Court, Stuart Clark appearing for Appellees Corsett, Belanoff, and Schatzberg. And appearing with me is my colleague, Christine Watson. Your Honors, I'll start off responding to one issue that Ms. Hurwitz raised, and that is the issue of the post-publication events. In a case that I'm afraid I didn't refer to in my briefs because I only became aware of its significance last week, but I did advise Ms. Hurwitz that I would be raising it with you, is Hutchinson v. Proxmire, 443 U.S. 111. In that case, an individual who happened to be a biological researcher in the field of psychology sued Senator Proxmire for defamatory statements made outside the Senate. Apparently, in those days, Senator Proxmire had a Golden Fleece Award, which was an award that he made for the most egregious example of abuse of public funds. And that case held, the Supreme Court held, that you can't retroactively make somebody a limited-purpose public figure because of post-publication publicity. And what happened is Senator Proxmire made his announcement, the announcement which was a defamatory statement for which he was sued, and then subsequently he further publicized his award by sending out, among other things, 100,000 mailers to his constituents and others. And the question there was it certainly became a public issue, but it wasn't at the time. And that's what the Supreme Court said. It wasn't a public issue, and you can't retroactively make somebody a public figure by subsequent publicity. And that principle applies here. Now, I can imagine that there are some circumstances in which one might immediately have an issue of public interest. But this is not one of them, because if you look at the facts, and there are lots of post-publication facts in there, the only facts that relate to pre-publication are, I think it was something like, a limited number of e-mail, not e-mails, message board postings, most of which don't even mention the efficacy of the drug. They're talking about day traders who are speculating on the stock exchange and whether the stock is going to go up or down. And those are in our papers. So I wasn't going to actually address the public interest issue, because I think it's fully dealt with in the briefs. Are you really arguing that this isn't a matter of public interest? I think it became a matter of public interest, Your Honor. But my point, and I sort of deviated from my prepared outline, but I wasn't going to argue that issue, because I was going to say that this Court, like the trial court, doesn't need to address those issues, because we can prove malice. And because we can prove malice. Oh, why don't you move on to malice? Yes. But, Your Honor, may I first deal with appealability, because my submission is that given the Supreme Court ruling in Will v. Halleck that there is no right of appeal, in this Court, in Batsall v. Smith, this Court held there was an appeal, and in my brief I've urged the Court to overturn that. We can't do that. The three of us sitting here can't do that. Well, may I at least submit the argument, Your Honor, so that you will know what it is? And I guess I should ask for an en banc then, Your Honor, if you can't, sitting together. Overrule the issue. But here's the point, so that you can consider that. Will v. Halleck emphasized the modest nature of the collateral order doctrine. And then in Englert v. McDonnell, which is in my briefs, this Court accepted that analysis and said that there was no appeal from an anti-SLAPP, denial of an anti-SLAPP order under the Oregon statute. And the reason why this Court found that was that they found that the requirement that the ruling be effectively unreviewable on appeal from a final judgment was not satisfied. Now, in Batsall, this Court found that that requirement was satisfied because under California law there was an immunity from suit. And the California Supreme Court in the case of Navalia v. Sletton and Jarrow v. Lamarche have held that there is no immunity from suit. And this Court, of course, under Erie is required to follow the decisions of the highest state court on matters of state law. Therefore, this Court is bound to follow the rule of law that there's no immunity from suit under the California anti-SLAPP law. That being the case, the underpinnings of Batsall is eliminated. And under those circumstances, my submission is that there – that this Court should apply its Englert decision also with respect to the California anti-SLAPP law. Is your argument that these cases, the California Supreme Court cases on immunity come after our decision, that this was – was appealable because it was analogous to under California law to immunity? Well, Your Honor, Batsall – Batsall was decided I think within a month or two of Navalia. And Navalia probably wasn't even in the reporters at that stage. But this Court subsequently in Zimani v. Carnes, it followed Batsall. And by that stage, both Navalia had been published and also a subsequent case of Jarrow v. Lamarche in which the Court – the California Supreme Court said exactly the same thing. So my submission is that – and as I say, if I have to ask for an en banc, I'll have to – I didn't think that, Your Honor, I must confess. And I – to the extent I have to reserve any rights before you now. We can do that after we decide. Well, very well. Thank you, Your Honor. But anyway, turning to the substantive issues, I mentioned, as you did in your question, Judge Schroeder, the – one has to infer something from the trial judge's ruling because he didn't make this explicit. But we did argue in that court, as I'm arguing in this court, that it doesn't really matter whether there's a finding that Rothschild satisfied the public interest requirement or even – Well, why are you so reluctant to discuss malice? You had about three invitations to do so. I'm going to do it right now, Your Honor. You keep avoiding it. So why are you giving away the language of the district court that says specifically at page 12, line 9, plaintiffs have demonstrated a probability of prevailing on those claims? Right. Isn't it – shouldn't you be pointing to that? Yes, Your Honor. And that's exactly where I'm – where I've reached in my argument. But the thing is, Your Honor, that the court didn't tell you why. And I'm going to – I'm going to – You've used over half your time, and you haven't even started on that yet. Your Honor, in order to show malice, I have to show that the statements were made with knowledge of falsity or with reckless disregard of the truth. If you take each of the statements in turn, the first statement that we object to is the statement that says there is no scientific evidence that Corset's drug – and I'm paraphrasing slightly – works for psychotic depression or anything else for that matter. That was the statement. Now, it so happens that Dr. Rothschild, who had worked – who had done some work in the clinical trials on this drug initially, had written an article about the drug. And the article is at volume 4, starting at page 1109. And in the article, he says, In this article we present additional data supporting the earlier observations that nifepristone rapidly reverses symptoms of PMD and is well-tolerated. In the same article, he says – and this is at volume 4, page 1111 – Nifepristone appears to substantially improve the psychotic and depressive symptoms seen in psychotic major depression. And then in a subsequent article, in September 2002 – this is at volume 1, page 297 – he refers to the prior tests and, without criticizing or suggesting any incorrectness with the original test, says, All five patients showed substantial improvement in their HDRS scores. And four out of five exhibit substantial improvement. So when he published that posting, Dr. Rothschild had actual knowledge that there had been positive results from the use of nifepristone. Therefore, he knew as a fact that nifepristone did work for at least some medical uses. His statement was that there's no evidence that it works for psychotic depression or anything else for that matter. And his own publication showed that he knew exactly that it had some positive effects. What is the scope of review of this Court as to Judge Ware's finding that there was a probability of success? And second question, do you agree with your friend that here the standard of proof is clear and convincing, or is it a matter of preponderance of the probabilities? Your Honor, with regard to the – let me answer the second question first. I believe it is clear and convincing. And all that means is that it's highly probable that the evidence that the fact that we've proven the fact. Right. So that's the standard, highly probable. And how can we review Judge Ware's conclusion that there's a strong – there's a probability of prevailing on those claims? Your Honor, I believe, and I've argued this in my briefs, I believe that it's a clear error standard. And the reason for that is that the statute itself asks the trial judge to determine the probability. I missed your word. It is clear? Clear error. Clear error. Because the statute says determine the probability. And this court in the Englert case talked about weighing and balancing the evidence. Now, the state cases have all said it's a matter of law for review de novo. And frankly, Your Honor, that's what Batzel said too. So – but no Ninth Circuit court has actually done an analysis – and I addressed this in my briefs – to sit down and say why should this be a de novo review? They're pretty much – and if you look at the lineage of that, it goes back to a case of – it goes back to Metabolife and I forget the other parties of the case, but the case that first decided that you could bring an anti-staff action in Federal court. But I've – that's in the briefs. I don't want to – Well, can I ask you a different question? At what stage was all the evidence known? Had discovery been completed when the district court ruled here or not? We had done a lot of discovery, Your Honor. That's how we found the telephone records, for example, that showed the correspondence between the acts of harassment which formed the basis of our other claims. And they all came from his telephone number. And that's how we discovered how the email – how the postings generated – were generated at the Pittsburgh medical conference when he happened to be there and at the ABA meeting in Washington, D.C. when he happened to be there. So we filled in the dots. That was discovery, and we certainly did that. But if I could get back to the – if I may, back to Malice's publications, the second statement that we take issue with, actually it's part of the first, is that Belanoff and Schatzberg knew that the drug – knew this, which means that the drug had no efficacy, and were selling their shares in that knowledge, basically that they were engaging in securities fraud. And once again, if it was not a true statement that the drug had no efficacy, then obviously it's not a true statement that that was the motive for them selling their shares. So once again, that is false. And once again, it was known by Dr. Rothschild to be false. And then there were other publications which I won't deal with specifically, but they're along the same lines. The next theme, which is a little different, is attacking Dr. Schatzberg as the Dean of the Faculty of Behavioral Science at the university. First of all, Dr. Rothschild misrepresents that he's a Stanford insider, and clearly he's not. But he has specialized or personal knowledge about what's going on at Stanford, and based on that, he represents to readers of his posting that an outside expert panel has been appointed to review Schatzberg's relationship with Corset. That's flat-out wrong. It's denied by Dr. Schatzberg. And Dr. Rothschild obviously knew that there was no such panel. So that was the third category of falsehood. And then finally, and perhaps most egregious of all, is the final posting that says that there were four cardiac deaths relating to people who used nephropristone in this trial. So now he's not only saying, first of all, his posting said it doesn't work, and then his last posting says, and it'll kill you. Those are very egregious defamatory statements. It's not supposed to work by killing you, is it? No, absolutely not. And that's the point. And that's, of course, very harmful to a company that is trying to get a drug approved by the FDA. And once again, Dr. Rothschild knew that that was a false statement because he was actually working on the clinical trials at the time those people died. And they died of consequences other than the ingestion of nephropristone. And that's in Belanoff's declaration, Volume 4, page 1046. So we can convincingly prove the falsity, not only the falsity of the statements, but his knowledge of the falsity. And under those circumstances, and the other elements are dealt with in my brief, so I won't dwell on those. These are not opinions. One only has to look at these statements. There is no opinion in a statement that says flat out there is no scientific evidence that the drug works. That's not an opinion. And none of those statements are opinions. So the ---- I take it all of the alleged defamatory matter was in Internet postings. Is that right? Yes, Your Honor. Everything was posted on a website that actually dealt with this company specifically. Oh, before I conclude. Pardon me. On the intentional interference with prospective business relations and emotional distress for the individual plaintiffs, is it your submission that those claims survived because the comments by Rothschild about the medication were not issues of public interest? No, Your Honor. Thank you for reminding me about that issue. I nearly missed it. No. Those claims are based on the harassment, which involved things like canceling Dr. Schatzberg's talk at the University of Texas, canceling hotel reservations of Dr. Belanoff and Dr. Schatzberg, posting hoax or leaving hoax telephone messages. You're saying that even though they were a matter of public interest, you've shown a probability of prevailing because of the mens rea with which they were executed. Yes. No, Your Honor. What I'm saying with regard to those is those causes of action are not based on speech or petitioning. They're based on other conduct. They're based on this conduct that basically interfered with his speaking arrangements, his hotel accommodations, left messages to say that Dr. Belanoff's wife or the message to say call your wife urgently made it sound like a family emergency. Right. But they aren't. Are they before us? Yes. Directly? They weren't really addressed by the trial court, but they were swept in with the antistat motion, and they're addressed very briefly. I think there's, if you look at the very last page or second last page of the opening brief, there's about a half a page saying, and that should follow. I'm just wondering whether that part of the ruling is appealable. Your Honor, I think the simple answer there is that those claims are primarily not based on speech. And I say primarily because I do, as a final paragraph in the complaint say, and in addition we rely on the postings. But essentially that conduct is not speech, it's not petitioning, and it can't possibly be hit by a 425 motion. So unless you have any questions, Your Honors, I would submit on my papers and on that argument. We have no further questions. Thank you. Thank you. Your Honors, I will address the evidence of actual malice that counsel spoke to. Before you get to that, address quickly whether the claims for intentional interference and so forth, are they part of your appeal? Yes, they are, Your Honor. In other words, it's your position they're subject to the slap statute? Yes, Your Honor. Because they're what, public interest? The court, the district court was to look at every single cause of action separately. When we look at, the district court did not do that here. We don't think. It's hard to tell because the court said there's some unprotected, some protected. We don't know. The interference cause of action, it is clear that what the plaintiffs are talking about there is the Internet postings. They say what was interfered with was relationship with prospective shareholders, with shareholders, with universities. Prank telephone calls to Dr. Belanoff canceling his hotel reservations, those are not going to interfere with relationships with shareholders. Even though they incorporate by reference in one line the telephone calls. I know that, but they aren't related to these other, you know, I'll call them slap statements, you know, the false type of statements, I mean the, right? That's correct, Your Honor. They're not related to them at all. They're separate. That is correct, Your Honor. The only cause. Why does it come under the slap then? The only cause of action that talks only about the, that even talks about the telephone calls is the emotional distress cause of action. Right. The other three are all about the postings and those should be analyzed separately as well. We think that the emotional distress statute, I mean, the emotional distress cause of action should also come within the purview. They incorporate by reference the postings. It's 50-50 the way that it's being read, that the emotional distress is from the postings and from the telephone calls. And the Court should look at the gravamen of the claim. We grant, Your Honor, that the cause of action, the one cause of action that has to do with the telephone calls is the emotional distress.   It's 50-50 the way that it applies to public interest. We understand that and submit that. Okay. On the issue of malice, when somebody knows about an open-label, noncontrolled, non-placebo study, as a first-year psych student, Your Honor, I knew that that was not scientific evidence of anything. And in fact, the plaintiffs themselves are discussed in various articles saying that that was not evidence of scientific evidence. In the May 2000 San Francisco Magazine article, it says, Dr. Belanoff and Shaksberg were aware there would be no real evidence one way or the other until the company completed its two Phase II trials. Placebo-controlled, randomized studies involving a sizable number of patients. There's three or four other references to the plaintiffs themselves saying that first uncontrolled study was not scientific evidence. It does not show malice of the opinion that there is no scientific evidence. As for the four deaths, Your Honor, the four deaths in trial, Dr. Rothschild has submitted a declaration saying, I didn't know about it. I was an investigator, yes. I left in January 2002. The deaths must have occurred afterwards. All the plaintiffs say is Dr. Rothschild was an investigator. They don't say anybody ever told him. They don't say that he ever knew about it, that the deaths occurred when he was there. The third, and the third thing they say, the counsel said, was that Dr. Rothschild knew that an outside panel was not investigating Dr. Shaksberg. No citation to the record, Your Honor. No declaration, no evidence of that. It's not clear and convincing evidence when it's just a statement in a brief and an oral argument by counsel. Okay. Let me ask you one off-the-wall question. Does this record indicate why these eminent scientists dislike each other so much? The theory that plaintiffs have put forth is that many years ago there was a patent dispute that involved Dr. Rothschild and the plaintiffs over Court Lux. Thank you, Your Honor. Okay. Thank you. The matter just argued is submitted for decision. That concludes the Court's calendar for this morning, and the Court stands adjourned.
judges: Schroeder, Tashima, Bea